Our next case on the call of the docket September 11 2012 is case or excuse me yeah case number 1 1 2 3 3 7 and 1 1 2 8 0 2 agenda number 4 and rate attention of Stanbridge at all counsel for the appellant Good morning, your honors. Mr. Pesci, Ms. Beer, may it please the court, my name is David Iskowich. I'm with the Illinois Attorney General's Office. This morning I'm representing the people of the state of Illinois in these consolidated cases as the appellant in the Stanbridge matter and as the appellee in the Lieberman matter. Your honors, this case involves the scope of the post-commitment provisions to the Illinois Sexually Violent Persons Commitment Act, in particular sections 55, 60, and 65. The purpose of these provisions is to provide for periodic opportunities for individuals detained as SVPs to demonstrate that their condition has changed or progressed to the extent that either discharge under section 60 is appropriate. The post-commitment proceedings at issue here do not provide a mechanism for a respondent to collaterally challenge the original judgment of SVP status on an annual basis or otherwise. That judgment has been found valid beyond a reasonable doubt. The facts underlying these SVP adjudications have been found beyond a reasonable doubt by a jury and subsequently affirmed on appeal. And thus we arrive in these proceedings and Mr. Lieberman and Mr. Stainbridge arrive in these proceedings as presumptively sexually violent persons. The respondents here are proceeding under sections 60 and 65. Lieberman has filed a petition for a discharge under 65 and for conditional release under section 60, while Mr. Stainbridge has limited his challenge to a petition for discharge under section 65. The respondents' petitions on their face failed to address the adequate criteria in section 60 and 65, such that the trial judge would be in a position to find probable cause that would justify further proceedings. Section 60 requires a showing by probable cause that it's not substantially probable that the person will recommit sexual offenses upon release. Section 60 under Stainbridge. Yes, Your Honor. Did the circuit court make the required filing for section 70 and then the defendant's condition had so changed then that a hearing was necessary and that's how it got to the level of section 65 probable cause hearing? Yes, Your Honor. In Stainbridge, Mr. Stainbridge filed under section 70, but because it was his first such discharge petition, that kicked him back into section 65B1, okay? And from there, I believe the language in 70 is you go to section 65B2, which is a full trial, if appropriate, meaning you've got to get through the B1 gatekeeping mechanism first. So yes, that's the background on Stainbridge. Does that mean that the legislature intended conflicts in expert testimony to be decided at a later hearing and not in a probable cause hearing? At a later hearing being the second stage? Not necessarily, Your Honor. Both section 60 and 65 permit and contemplate that both sides will submit and present expert testimony on the issue of whether the person is still an SVP for purposes of section 65 or whether the person remains likely to commit sex offenses upon release under section 60. Our argument is, and this is going into the perceived tension between this court's decision in Hardin and the text of section 1665, I believe. I'll get back to my point I was making earlier, but to answer Your Honor's point, our position is that the unique characteristics of these post-commitment provisions expressly allow the trial courts, and in some instances instruct the trial courts, to look at side-by-side expert reports in measuring whether probable cause exists to advance the case to a second I think you're referring to the section in 65-1, or maybe it's 65-2. B-2. It's really tricky. Where the committee has not waived the right to file a petition. Correct. And then it basically says that the court should examine the reassessments. Correct, Your Honor. Those are expert In this way, section 55 works with section 65. So what happens is the state will file a petition for finding a no probable cause. Why does the state do that? I don't understand it. It has to do it. Why? Where is it? It's nowhere in the statute. In section 55, the state, I believe, has to do it annually. Section 65A, the state must submit an annual report detailing whether there's been sufficient progress made to justify discharge. And at that time, the respondent is also allowed the opportunity to have an expert opine on his end. In any case, I'm not so sure that it says that the state does anything. I think it says that the department files this with the court. And for some reason, nowhere here does it talk about a motion for no probable cause. But let me ask you this. Of course, Your Honor. One of the disputes we have here, I know there are a number of them, but I think Justice Freeman raised this, was how we perceive this requirement for a probable cause determination under either 60 or 65. And I guess my question to you is, your position is that because there are multiple evaluations, that the purpose of the probable cause hearing is for the court to determine which one to believe. Correct, Your Honor. Then what is the purpose of having a jury trial? A jury trial following? Yes. The jury trial following the section 65 probable cause hearing involves a different trial fact, the jury, which is a significant difference. The burden is also different. The state has to prove the burden has shifted to the state at that point to show by clear and convincing evidence that the person is no longer sexually violent. Would the evidence, the credibility decisions be any different? They might be, Your Honor. Certain other witnesses could be called character witnesses, witnesses who might testify as to accommodations that might be available to the person on the outside, vocational opportunities, relationships, family questions. All of these things that wouldn't come up at the first stage 65B2 hearing would be open to debate and review at the much broader hearing that's contemplated under the following section, under 65. The statute as written, and even my able opponents can see that each of these subsections, whether 60 or 65, contemplates that conflicting experts will opine. What they don't say, what their argument is, in effect, is that you should just look at the respondent's proof just to see if he made a plausible account to advance on. But what they don't answer is what exactly the judge is supposed to do with the state's proof, oftentimes which will be in opposition to the respondent's expert report. And as is clear from this Court's rules of statutory interpretation, phrases and terms in a statute shouldn't just be tossed aside cavalierly or rendered superfluous or read out of a statute. The only reasonable conclusion in light of this text is that the trial judge, when faced with these conflicting reports, whether on paper or in person, is going to have to make a judgment call about which is more credible, then advance the case on based on that finding and any inferences that could be drawn therefrom. Mr. Iskowitz? Yes, Your Honor. Isn't the same liberty interest involved at both the pre- and the post-stage? Meaning the liberty ‑‑ I'm sorry, Judge. The liberty interest involved at both the pre-commitment and the post-commitment stage? Because you're asserting that there should be different standards applied as to the probable cause hearing, whether it's pre or post, right? No, Judge. The probable cause is probable cause. Probable cause is defined by this Court in Hardin, is that the moving party must make a plausible account and draw in all Well, how the expert testimony is viewed in light of the difference between pre and post, right? Correct. I'm just saying that the probable cause equation at the post-commitment proceeding is viewed with perhaps a broader evidentiary Yeah, and I'm just asking why that would be in light of the fact that it would seem like the same liberty interest is involved at both the pre- and the post-stage. I apologize, Your Honor, I'm not understanding the liberty interest angle. Well, whether someone is going to stay committed or not, there's a liberty interest involved in that. Sure. Right? Sure. And your assertion is that how you view the expert evidence at the pre-commitment hearing is different than how the judges view it at the post-commitment hearing, right? Correct. So I'm just trying to understand, with the same interest involved, commitment, why should there be a different standard? Can you articulate why the way the expert testimony is viewed should be different at the pre-stage versus the post-stage? Well, I suppose, Your Honor, this might get back to my previous point I made in my opening remarks, that the purpose of the post-commitment statute differs. Here we're at a situation in the litigation where these individuals have been found to be sexually violent persons. They cannot come in and claim as their experts, as my opponent's experts did. Well, he was never a sexually violent person in the first place. There's never been anything wrong with him at all. He's perfectly fine. So the burden necessarily rests in showing that that liberty interest bears attention at this stage. That rests on the respondent as the moving party to show some sort of change or progress or some kind of mitigation in the mental disorder that causes this person to sexually offend. I'm not sure if I'm answering your question, Your Honor, but I think that's the difference here is that pre- and pre-commitment proceedings, the burden, of course, is on the state, as it should be, to make a plausible count that proceedings can move forward to trial. On the back end here, we are dealing with individuals who are SVP. The jury found them SVP. These decisions were affirmed on appeal. And in that case, some burden or responsibility must rest on the moving party to demonstrate that there has been something, there's been some progress or change, and that's reflected even in the text of Section 65, which requires the respondent to show that he's not still a sexually violent person, meaning that he comes in as sexually violent and he has to make some change, show some change in behavior, whether it be through treatment, whether it be through some, well, there's all kinds of things that could serve as examples, perhaps some kind of physical accident that renders him unable to sexually offend, backed by science, of course. But the most common thread in my reading of the appellate or appellate court cases regarding the propriety of moving these cases to the second stage is whether the individuals have engaged in any kind of treatment regime. Treatment regimes are available at DHS, and neither of these individuals has participated in any treatment. Mr. Lieberman, I believe, has been in the department for almost, coming up on 13 years now. Mr. Stainbridge, not much less. And in all that time, neither has indicated any desire to participate in treatment that the experts say can mitigate the disorder such that you can get to that point where you're either not sexually violent anymore or, under Section 60, that you can be released but with some preconditions, as in checking into a halfway house, having the job lined up, meeting with a therapist once in a while. Treatment is the first way to come to grips with these problems, and neither of these individuals has participated in it. In fact, neither individual claims that there's anything wrong with him in the first place, and that's why they don't need to go to treatment. Neither individual here has shown a bit of remorse. Neither individual has shown that they're interested in coming to terms with their problem. Mr. Lieberman, in particular, denied that he was the rapist in some dozen cases from the late 1970s, despite being pointed out in court by his victims, and it's only recently that he came to terms with that and said that, yes, he did it, but then he backpedaled it. So the treatment and other remediative procedures that these individuals can take and that they should take to get to that second stage are vital importance in this treatment regime. And Kansas v. Hendricks, you know, succinctly said that the purpose of these statutes is to make sure that dangerous, sexually dangerous people are not let out into society until they're okay to do so. Let's assume it's a different kind of evidence than what we might have here, where there is an expert that says, in fact, this person has been cooperating and has made progress, and according to that expert, that there is a substantial, whatever the language of the statute is, a substantial basis to say he's not going to wreak an offense. I'm back still at the first. Why a positive cause, a probable cause is not a probable cause is not a probable cause. Why doesn't this look like a probable cause in a pre-commitment? So we have to analyze the statute, and I think that's where we're at, and I think we have to admit the statute is rather difficult and inconsistent maybe in some of the ways that it's done. I found one thing very striking about 65B that we're talking about here in terms of this hearing, that the committee is not entitled to be present at the probable cause hearing. How do you think that fits into this analysis of what the statute is? How do you think the legislature pictures this hearing to be? I mean, you seem to be saying that your position is this is a place where the trial court makes the decision about who to believe. Correct. Why would the, at such a critical point, why would the committee not have been entitled to be present at that kind of hearing? It's the initial proceeding, Judge, and I understand your concern about that, and I understand the question, the question being, if I might paraphrase, why shouldn't he be at that kind of hearing that seems to be a little bit more substantive in nature. I don't know, Your Honor. I do know that Lieberman himself was at this hearing, and Stainbridge, while given an opportunity to go to the hearing, refused. So speaking anecdotally, I don't know what the numbers are on who goes and who doesn't. I'm not concerned about what clues this gives us to legislative intent. Well, I think the legislative intent is better understood by reference to the experts that can come in and testify. That this is supposed to be a hearing at which the judge, when statutorily obligated to review conflicting reports, must make a judgment on that, and the fact that the respondent isn't able to, is not entitled to attend at that, I don't think speaks to the, I don't think it dilutes the, our interpretation of the text, that this is supposed to be a hearing at which the judge, when faced with differing accounts, has to make a judgment on those accounts. He is, of course, going to be at the full hearing, which is broader in evidentiary, in an evidentiary sense much broader than the preliminary hearing, and I think that that should mitigate any concern that this preliminary hearing, at which only experts are opining on the propriety of moving forward, that that, I hope I've waylaid your concern perhaps a little bit. If I could just get back, jump all the way back to the first opening comments I made, this Court really need not delve into the pardon inquiry and the pardon thicket, because, as I said in my opening remarks, the petitions filed by both of these individuals are facially defective because they failed to answer the statutory criteria in Sections 60 and 65. Section 65 requires a showing, by probable cause, that the person is not still sexually violent. Dr. Schmidt, who was Lieberman's expert, didn't address whether he was still sexually violent, by reference to his testimony, by reference to any treatment, by reference to any progress, by reference to any discussions he might have had within this, coming to terms with what he did. Rather, Schmidt opined that the disorder that Mr. Lieberman was diagnosed with, paraphilia NOS, in his academic opinion, doesn't even exist as a disorder in the first place. And he also testified that even if that disorder did exist, there's absolutely nothing wrong with Mr. Lieberman, because his decision to rape all these women is probably, perhaps, he wasn't too sure, traceable to one instance when he was a teenager, and someone who he was trying to have sex with said no and then said yes. The trial court, by the way, found that explanation to be completely and absolutely and totally absurd. In short, Dr. Schmidt didn't ever explain why Lieberman's not still sexually violent. All he explained and opined about was why he was never sexually violent in the first place. And, therefore, even putting aside all of the State's proof and avoiding the hardened question here. And the same goes for Stainbridge, whose expert testified only that there was never anything wrong with him in the first place and basically repeated his trial testimony that was rejected by the jury. The trial courts here both said, in so many words, that this wasn't good enough for purposes of the subsections. Judge Porter sitting in Cook County in the Lieberman case said that, well, we already know that the disorder that Lieberman has is, the jury found it. So I'm not sure what I'm supposed to do with that. It's been found to exist in this case. And as for his explanation why he raped all these women, to explain his proclivity for raping, it was absurd, as noted. And the judge in Stainbridge, when confronted with the Witherspoon report, simply said, this is all the same stuff you gave me before. There's not much I can do with it, in so many words. So we would ask that this Court affirm the Lieberman case and reverse the Stainbridge case on the much cleaner basis that neither case presented, neither respondent presented a case that met the statutory criteria for post-commitment purposes by providing an account that they're no longer or not still sexually violent. Your Honors, I see I'm out of time. If there are no further questions, I thank you for your time. Thank you. May it please the Court. Mr. Pesci, Mr. Iskalich, I'm Betsy Beer, here on behalf of the Court of Appeals. And on behalf of Kevin Stainbridge, I so very much disagree with Mr. Iskalich on what Mr. Stainbridge is doing here. He filed a petition under Section 70 of the Sexually Violent Persons Commitment Act. It has nothing to do with Section 65B. One, it has nothing to do with the language of Section 70. And it's an important distinction because when you look at the language of Section 70, it's titled Additional Petitions for Discharge. And then it starts off by talking about in addition to those provisions allowed in Section 65B.1, we have this other provision under Section 70. It is different from 65B.1 because 65B.1 is tied to the timing of the reexamination that occurs under Section 65. And under Section 70, it says very clearly that the person can file at any time. So it's unrelated to any of the examinations done by the Department of Human Services. In addition to this, and this is a very important distinction, because this statute talks about a person who files a petition without the Secretary of the Department of Human Services permission for the first time and what happens. And then talks about what happens when the person has filed a petition without permission from the Secretary on subsequent occasions. And I want to first focus on the language regarding the subsequent petitions that are filed without permission. It is my belief that that first petition could have been filed under Section 65B.1 without permission or Section 70 without permission. But in either case, we're now looking at the subsequent, the second, third, whatever, that's filed without permission. And in that situation, the petitioner must allege facts which are found could support the court finding that, and I think the particular language is that the condition of the person has so changed that it would warrant proceeding to a probable cause hearing. When you look at what it says with regard to subsequent petitions, conditioning those petitions on allegations regarding change, presumably, but not necessarily related to treatment. And when you look at the first petition filed without permission, no requirement for change. And if the legislature that enacted this knows how to say, you know, we require change, an allegation regarding change on subsequent petitions, and they're not requiring it on the first, then I think it's real clear what the legislature meant when this statute was enacted. Significantly, and I'm embarrassed to say I learned this this morning about 515, when I just, I'm going to look at that statute again, and I realized that I hadn't looked at the amendment to that statute that was made January 1, 2000. And so I clicked that button on my computer, and it will, of course, the change was, but was made on January 1, 2000. And so I looked at that statute, and it was changed to however. But an act of complete thoroughness, I read on, and yes, the previous statute, the one that was enacted before January, that was in effect before January 1, 2000, said that the proceedings, the probable cause proceedings under Section 70 will be held in conformity or, in conformity with the statute. And I have clients with Section 65B1. That language was removed. It's not here. There's no reference to 65B1 probable cause hearing in Section 70. My client, Mr. Standridge, did not file this petition, this first petition for discharge, this first petition for discharge without Secretary's approval under Section 65B1. It does not apply. We're dealing with Section 70. Am I understanding you correctly where you're saying there's no probable cause requirement? No, and the statute says this very, as the Justice has stated, it's a difficult statute to read, because when it talks about that first petition, it just says a person can file that first petition. Then it goes on at length to talk about the problem and what the person needs to allege. But then it goes back, finally, at the bottom, and then it says, if, and this is I think the last sentence, if the person has not previously filed a petition for discharge without the Secretary's approval, the court shall set a probable cause hearing. Then, after the probable cause hearing, then it continues, proceedings, and the continued proceedings will be held in the same way. The proceedings under paragraph 65B2 of Section 65, if appropriate. I think the if appropriate refers to when the court finds probable cause, and 65B2 talks about the trial that will happen in the case. It can be a jury trial, it can be a bench trial, the standard of proof, and who has the burden. But the probable cause hearing has to occur. As it did here. And the issue at the probable cause hearing in Mr. Stanbridge's case is, is he a sexually violent person today? Does he meet that criteria? At the probable cause hearing, he presented the reports of, report of Dr. Witherspoon, and he presented the report of Dr. Smith, and as the appellate court found and reviewed the evidence that was presented, Mr. Stanbridge, through Dr. Witherspoon's report, established a plausible count that he is not a sexually violent person. Dr. Witherspoon used the tests, the instruments that are used in this field, used the actuarial instruments that are used in this case, and he presented the report of Dr. Smith, and Dr. Mostcurrent wrote a report that went into some detail and gave a plausible count that either at this time he had found no sexual psychopathology, and in addition to that, when you looked at the STATIC 2002-R in combination with another instrument, the PCLR, that those combined showed to the doctor that he was not a sexually violent person, and the other instrument, the PCLR, showed to the doctor that he was low risk. The distinction that the State makes between pre-commitment and post-commitment in reference to pardons application is not supported by the definition of probable cause, and it's not supported by the statute. At a pre-commitment probable cause hearing, the respondent has a right to present evidence. And that's provided in Section 25C. And it's going to be assumed that that evidence, at least I hope, is going to be contrary to the evidence that the State presents. It's going to be conflicting evidence, just as the evidence presented in Hardin was conflicting evidence. Now, I understand that it was one witness, one expert, and the conflicting evidence came from cross-examination. Nonetheless, the evidence that's elicited during cross-examination is evidence, and this Court would not have found that the Court had improperly weighed conflicting evidence if conflicting evidence hadn't been presented. Conflicting evidence should be presumed at every hearing under the Sexually Violent Persons Commitment Act. So then is it up to the trial court to assess the credibility of each side's account in measuring the existence of probable cause? I think if the trial court has confronted what's called blighted credibility problems in a probable cause hearing, then yes. But if that blighted credibility issue isn't presented, then the question is whether or not the petitioner has presented a plausible account on whatever the petitioner has to establish. So is the contrary evidence only to point out blighted credibility problems? It is not. And I think that it has to do with how these cases get to court. And to answer the Justice's question, or at least to attempt to answer the Justice's questions about how we all get here, it's that Section 65 requires reexamination, and the Court's supposed to look at that. And for some reason, then the State files that Petition for Finding of No Probable Cause. And that 65b1 talks about when the petitioner doesn't waive his right to petition and doesn't file, then under the Petition for Finding of No Probable Cause, it becomes a perfunctory hearing because the person didn't file a petition. Ms. Beer, your time has expired, and you're sharing time, right? Yes, I apologize. I apologize to counsel. Good morning. May it please the Court, counsel. My name is Anthony Pesci, and I represent appellant Mr. Brad Lieberman, who in January will mark his 13th year in civil custody in the State of Illinois, based on a diagnosis of a mental disorder that does not exist, and based exclusively on past criminal behavior. Fundamentally, this is a civil rights case. The State is civilly incarcerating people who have served full criminal terms as determined appropriate by trial courts, appellate courts, and the Department of Corrections. It is the State's position that these sentences weren't long enough in order to protect the people of Illinois, and therefore, it is necessary. As the United States Supreme Court and this Court has made crystal clear, this presents a serious constitutional concern, which this Court is designed to be vigilant against. That constitutional threat is that civil commitment will continue based solely on past criminal conduct, exclusively in violation of due process protections, double jeopardy protections, and in violation of the Constitution of the United States and the State of Illinois. In recognition of this, the General Assembly instituted several protections built right into the Act, and one of those protections is that the committee, after commitment, is entitled to annual review, and in order to have that annual review, part of that process is to have a probable cause hearing. But if the State requests this Court to act today, it would eviscerate the purpose and indeed the letter of the law that protects citizens of Illinois from unwarranted and unnecessary civil commitment. The State seeks to continue Mr. Lieberman's commitment three ways. The first is to rely on a diagnosis of paraphilia, not otherwise specified non-consent, which has no scientific support. The second is to rely almost exclusively on 34-year-old criminal behavior. Coupled with that is its legal position that probable cause should come to, post-commitment, should come to such a high burden that no court should be able to undo decades of law on what probable cause means and how it's determined. This Court should remand Mr. Lieberman's case for a full trial on the merits for three reasons. First is that following the testimony of Dr. Schmidt at the probable cause hearing in 2008, Mr. Lieberman had unquestionably established a plausible account that he was no longer a sexually violent person who needed to be committed, and that he was no longer likely to commit further acts of sexual violence if he was convicted. Secondly, the paraphilia not otherwise specified diagnosis that the State relies on is, in fact, based exclusively in 34-year-old criminal behavior, and all three testifying experts agreed that that diagnosis is based in criminal behavior alone. And finally, the State's position today regarding probable cause would nullify the purpose of not only the annual review that post-commitment committees are entitled to, but would nullify the purpose of the probable cause hearing itself. The trial is designed to exist beforehand, and any further protections in the act that allow individuals to remove themselves from further commitment. As Dr. Schmidt testified at the probable cause hearing in 1986, he chaired the committee for the Diagnostic Statistics Manual, the DSM-3, which determined whether or not paraphilia not otherwise specified would be included as a mental disorder that the psychological community should be using in order to diagnose behavior. That committee in 1986 and every DSM committee since then has rejected the diagnosis of paraphilia not otherwise specified, and the reasons for this are twofold and continue to this day to be the same reasons. The first is that paraphilia not otherwise specified quite simply has no scientific support. It was the State's position just a few moments ago that, of course, science ought to back our determinations about whether or not a person has a mental disorder. And I understand that it's Dr. Schmidt, right? Yes. And he didn't think that this was a recognized disorder. Is the State right when they say that the testimony of Dr. Schmidt failed to address whether Lieberman was unlikely to commit acts of sexual violence if he was released or was no longer sexually violent? No, the State is incorrect, Your Honor, for two reasons. The first is that Dr. Schmidt unequivocally testified that Mr. Lieberman suffers no paraphilia. He doesn't suffer the paraphilia that the State claims that he has, and he doesn't suffer any other paraphilic disorder that makes his sexual violence likely. It is the key wording of Section 5 of the SVPCA statute that people who we commit in Illinois should suffer from mental disorders that compel sexual violence. Dr. Schmidt unequivocally testified that Mr. Lieberman doesn't have that disorder. Isn't that issue resolved in the trial, however, the original trial of commitment? That was the issue, was it not? Whether or not Mr. Lieberman was suffering from a mental illness. That was the issue. There was a termination. He was. He had a right to appeal it. It's affirmed. Isn't that discussion over? With respect, no, Your Honor, it's not. The statute actually identifies specifically that people who are committed for having sexual disorders are allowed to challenge that continually, whether or not they continue to suffer from that mental disorder. Where does it say that? It's part of the annual review process and the continued petition process, that you're allowed to petition for conditional release, that you're not likely to commit future crime is the standard there, or that you're entitled to discharge because you don't have the disease that you're being committed for. Let me ask one other question along that line. In terms of the standard, we all know that the statute has been amended, effective August 24th, and that the statute has been amended and the standard has been changed to some degree. The legislation also says that that new standard shall apply to all pending petitions. What does that mean for us here? It's Mr. Lieberman's position that that amendment doesn't apply and that we should use the appropriate 2008 version of that statute. Even if this Court opted to use the revised version, the 2012 version, the issue is still the same. The testimony is still the same. Mr. Lieberman does not have paraphilia not otherwise specified and should not continue to be civilly incarcerated for that reason. The modification in the language from still, I believe, to no longer, really represents the same issue. Is this person suffering from a mental disorder that compels sexual violence and thus we need to have him civilly committed? That issue renews itself even after the jury finding. And let's be clear, Mr. Lieberman is not attacking his original jury verdict and this is not a collateral attack on that verdict. What this is, is a petition to have a hearing on whether or not Mr. Lieberman's commitment should continue. The only bar to that hearing, the only burden that Mr. Lieberman has to overcome is whether or not he can establish probable cause that he's no longer a sexually violent person and that he's not likely to commit acts of sexual violence if he's released. And those seem like very simple questions and I notice that you argue by inference that Schmidt was saying that. Why does it take an inference rather than a direct statement that Lieberman is no longer sexually violent and was no longer sexually violent and unlikely to commit acts? Why do we have to argue by inference that that's what Schmidt was saying? With respect, I think Mr. Lieberman's position is not that it's by inference. His testimony is clear. Mr. Lieberman doesn't have a paraphilic disorder and need not be committed because of it. Right, but you argue by inference that means that he's unlikely to commit acts of sexual violence. To the extent that the state is arguing essentially that there's almost a writ burden that Mr. Lieberman has to present testimony that complies with the express letter of the law, and this was similar to the opinion of the first district, that Mr. Lieberman's witness, Dr. Schmidt, who was a world-renowned expert in sexual behavior and author of the DSM, had to testify that Mr. Lieberman's testimony, meaning state out specific words, that he is not likely to commit sexual acts of violence in the future. And it's just not true. It's not necessary. The obvious and plausible implication, to use this Court's language from Hardin, is that he is not likely to commit sexual violence in the future because he doesn't have a mental disorder that compels or compulses that behavior. That really is essentially the only issue. Is this person still sick such that we have to protect the person because we think that he's so likely to commit future crimes that that detention allows us to overcome our natural tendency to prevent the government from detaining people without cause? And beyond that, the only issue at this petition was whether or not Mr. Lieberman presented a plausible account that he had established that. We're not asking this Court to find that he did definitively and that he ought to be released. The only relief that Mr. Lieberman is seeking is that we have a full trial on the merits as to whether or not he ought to be continued to be civilly detained. And that issue is governed by a low bar, as this Court outlined in its Hardin decision. We need only present that plausible account, reliable or even reasonable evidence, and it is unquestionable that after Dr. Schmidt finished testifying, there was reason to believe in plausible evidence that Mr. Lieberman did not suffer from a disease, that the diagnosis that he is based, that his commitment continues on, and in 2008 he had been committed for over eight years at that point, there's a pretty significant disagreement about whether or not that diagnosis even exists in the medical community. And the majority of the medical community, indeed the people who write the books that tell psychologists how to diagnose diseases, say you shouldn't be using this disease. And to loop back into my earlier point, the reason for that is not only that it doesn't have scientific support, but that the DSM Committee in 1986 was concerned that it would be abused by the legal system and that that diagnosis shouldn't exist. There's no reason to use it. I've seen an amount of time. If there's no further questions, I'll continue on rebuttal. Thank you. As I understand it, you're also splitting the rebuttal, correct? That's correct, Your Honor. My five minutes in rebutting S. Appelant in the Stainbridge matter and in response to Ms. Beer's comments. I just have several quick comments, Your Honors. Ms. Beer, my opponent, continues to emphasize that her petition was filed under Section 70, and that somehow that relieved her of the evidentiary requirements imposed by Section 65B2. I'm sorry, Section 65. The statute, as it reads now, is that if you file your first petition under Section 70, you go to Section 65B2, if appropriate. That if appropriate language is important, because the only way to get to Section 65B2, which is a full trial on a discharge petition, is by fulfilling the criteria delineated in Section 65B1, which, as we've talked about here today, is by showing probable cause that you're not still sexually violent. Stainbridge is not entitled to an immediate trial on his first petition for discharge under a plain reading of Section 70 in conjunction with Section 65B1. Justice Thomas in the Court expressed some concern that blatant credibility problems maybe could be the cause of the dispute, determined by looking at reports side-by-side as somewhat akin to a cross-examination. The difference is that oftentimes competing reports are going to be compiled and read, compiled independently, and then read independently by the judge, and will not therefore often provide a very good opportunity to ferret out the blatant credibility problems in the other's report. Where the validity or credibility of the report itself is at issue under cross-examination. When a judge has two reports, neither of which was compiled in conjunction with the other, or any kind of collaborate effort, it is going to be up to the judge at that point to determine reviewing the past record as a whole, and any progress that's been made, whether one or the other report is going to carry the day. And one last point I want to focus on. Even if this Court disagrees that these petitions filed in these cases were not facially defective, and even if this Court finds that the trial court in Hardin, I'm sorry, the trial court in Stainbridge and the trial court in Lieberman exceeded the bounds set by Hardin in weighing these reports, both sides' reports and the expert opinions proffered by both sides suffered from the kind of blatant credibility problems that this Court in Hardin said that a trial court need not ignore. The judge in the Lieberman matter completely dismissed Dr. Schmitt's opinion that Lieberman suffers from no mental disorder whatsoever, considering the number of his victims and his history as a violent rapist. He called Schmitt's opinion in this regard blatantly, or totally completely absurd on the record. And likewise, the Stainbridge expert, while the trial judge didn't find that he was blatantly incredible and used those words, he did find that his assessment overall offered absolutely nothing to the process, because it merely parroted the same reasons and the same justifications for finding that he wasn't an SVP that he raised at the original trial. And so if this Court disagrees with us on those first two points, it can and should dispose of the cases under the blatant credibility outlet provided in Hardin. If this Court has no further questions, we ask respectfully that the Court reverse the decision in Stainbridge and affirm the appellate court's judgment in Lieberman. Your Honor, I'd like to begin by addressing the last point that the State made, specifically that Dr. Schmitt suffered some blatant credibility problem. Mr. Lieberman's position is twofold in response to this. The first is that the Court's determination that the no means yes explanation spoiled the batch, so to speak, is incorrect. Dr. Schmitt was there to testify about whether or not Mr. Lieberman suffered from a disease. He was also there to testify as a fact witness that PNOS is not recognized in the DSM. That's based on his experience authoring it. He's also there to testify that Mr. Lieberman had a GAF score of 71, which was undisputed by testifying experts for the State. That GAF score puts Mr. Lieberman's likelihood of recidivism and behavior well within the normal range. That is an undisputed fact in the record. It's not opinion testimony to be weighed based on credibility. And finally, it's undisputed in the record that Mr. Lieberman's diagnosis of PNOS is based exclusively on his past criminal behavior. Those elements are not opinions. They're truths that the Court accepted. And based on that evidence alone, really, there is plausible evidence that Mr. Lieberman is not suffering from a mental disorder that warrants his continued commitment. And based on that evidence alone, that fact evidence, the Court ought to have found that there was probable cause that he was no longer a sexually violent person. Now, Dr. Schmidt's opinion is that Mr. Lieberman does not suffer from a paraphilic disorder. That opinion also is not ruined or should not be set aside by a question that Dr. Schmidt was responding to. And in responding to that question, his answer was, I don't know what caused Mr. Lieberman to commit acts of sexual violence. However, Mr. Lieberman does not suffer from a disorder that compelled that behavior. Second, the State's position that conflicting evidence is invited at post-commitment but not pre-commitment is incorrect, and it leads to an absurd result, that result being that a court in determination of probable cause need not follow this Court's opinion unhardened because it's post-commitment. The Court isn't looking for a plausible account under the State's interpretation of what the statute means, but is actually allowed to weigh evidence in a way that this Court has forbidden trial courts from doing. In the pre-commitment stage, now his reason for this is that the statute subsumes the idea of conflicting evidence, and this just is not correct. Yes, the statute does subsume the idea of conflicting evidence, but because there is a liberty interest at stake. That liberty interest is the same pre-commitment as it is post-commitment. We're going to be locking up a person for having a disorder. It's our job to determine whether or not there's probable cause to believe that that disorder exists or doesn't. Pre-commitment, the Court sitting in a probable cause hearing is invited not only to hear cross-examination testimony, which is our best tool towards finding the truth, but also is invited to listen to hearsay evidence, evidence that's explicitly and traditionally unallowed at trial courts because it's unreliable. But courts are invited to consider that evidence in conflict in order to determine whether or not there's probable cause. That does not invite this idea of weighing that the State would have us do post-commitment. The State modifies its understanding of whether or not a person is entitled to an expert and whether or not an expert is required. An expert, and indeed Mr. Lieberman at his pre-commitment probable cause hearing, was not barred from having an expert to present conflicting testimony. It's just not entitled to one at that phase. The fact that he is entitled to have a court-appointed expert, just like Dr. Ostroff, also doesn't guarantee that that testimony is going to be conflicting. Dr. Ostroff found that Mr. Lieberman had PNOS based exclusively on analysis of his criminal behavior. The existence of Dr. Ostroff did not invite the court to weigh whether or not Mr. Lieberman had a sufficient expert testimony. It's just not the way that the statute is written out. It's not the way that it ought to be interpreted and applied, and it's not the way that this court indicated it should be applied in Hardin. Finally, the State argues that we're not here to talk about Hardin. We're here to talk about whether or not Mr. Lieberman's petition was facially sufficient. Now, this court, when it vacated the original decision from the First District, sent it back down with this explicit instruction to consider the decision based on this court's decision in Hardin. And the appellate court did not do that. Instead, that court proffered a series of rules that it felt Dr. Schmidt had not met, and the State now relies on that position. There's two problems with this. One is that the statutory sufficiency is not an issue about admissibility, it's not an issue about relevance, and it's not an issue about plausible accounts. It's an issue about whether or not Dr. Schmidt's presented testimony that is supposed to be elicited from the statute. And it's clear on the record that he did. He testifies regarding mental disorders, he testifies regarding whether or not Mr. Lieberman has a mental disorder that makes his conduct likely to lead to sexual violence. That's all that is needed to establish a plausible account. The further testimony that the only sexual disorder that Mr. Lieberman's ever been accused of having is unsupported by science, establishes a plausible account that maybe Mr. Lieberman does not have the disease that he supposedly does, or no longer has that disease. And may not be committed for it. Those facial plausibility arguments don't apply to Dr. Schmidt's testimony. His testimony was entirely sufficient. The State never objected to him testifying, the State never objected at trial whether or not Dr. Schmidt's opinion was sufficient. To try to manipulate this now into some sort of fry argument is not what we're here to discuss. We're here to discuss whether or not Dr. Schmidt met the standard for plausible, for probable causes articulated by this court, and indeed he did. And this court should remand for a full trial on the merits. That's the amount of time. If there's no further questions, thank you. Thank you. Consolidated case numbers 112337, in-rate detention of Stanbridge, and case number 112802, in-rate detention of Lieberman, are taken under advisement as agenda number four. Thank you.